

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*

*One Saint Andrew's Plaza*
*New York, New York  10007*

February 1, 2008

**BY HAND**

Hon. Theodore H. Katz
United States Magistrate Judge
Southern District of New York
United States Courthouse
500 Pearl Street
New York, New York 10007

> Re:   *Hector Ruiz v. United States*,
>        07 Civ. 9461 (RMB) (THK)
>        *United States v. Hector Ruiz*,
>        02 Cr. 1290 (RMB)

Dear Judge Katz:

    The Government respectfully submits this letter in opposition to Hector Ruiz's motion to vacate or set aside his sentence, pursuant to Title 28, United States Code, Section 2255 (the "2255 Motion"), which was submitted with an affidavit from Ruiz dated September 19, 2007 (the "Ruiz Aff."). In his motion papers, Ruiz claims that he was denied effective assistance of counsel because his attorneys allegedly: (1) unilaterally waived a "safety-valve" proffer with the Government that would have enabled him to avoid application of the mandatory-minimum sentence that applied to his crime. (2255 Motion 5); (2) conceded that Ruiz would be subject to the mandatory minimum sentence by failing to challenge the Government's lab report and method of weighing the heroin recovered from Ruiz's co-conspirator (*id.* at 6); (3) refused to permit him to testify at trial (Ruiz Aff. ¶ 4); (4) refused to call any exculpatory witnesses on his behalf (*id.* ¶ 5); (5) failed to provide him with copies of evidence or other discovery materials (*id.* ¶ 7); and (6) failed to inform him that the trial would be taking place or to be prepared to defend him from the charges he was facing (*id.* ¶ 8).

Hon. Theodore H. Katz
February 1, 2008
Page 2 of 15

  Ruiz's allegations are squarely contradicted by the record and by the sworn declarations of Ruiz's trial and sentencing counsel submitted with this response. Accordingly, the Government respectfully requests that the Court deny the petition without a hearing.[1]

## BACKGROUND

  A.  **The Offense Conduct**

  On September 15, 2002, Drug Enforcement Administration ("DEA") agents and Aruban law enforcement authorities observed William Saenz Duque and his cousin, James Duque, deliver a suitcase containing more than one kilogram in heroin to a man in the vicinity of a hotel in Aruba. (Ruiz Pre-Sentence Report ("PSR") ¶ 11.)[2] Aruban authorities learned that the suitcase was to be delivered to Hector Carvajal in the United States. (*Id.* ¶¶ 12-15.) After observing the delivery, Aruban authorities seized the suitcase and placed William Saenz Duque and James Duque under arrest.

  The individual who was to deliver the suitcase to Carvajal agreed to act as a confidential informant ("CI") for the DEA. (*Id.* ¶ 16.) On September 16, 2002, the CI flew to New York from Aruba with the suitcase and made several recorded calls to Carvajal to arrange for delivery of the suitcase. (*Id.* ¶¶ 16-17.) Later that evening, the CI, who had been provided with a suitcase that was similar in appearance to the one that had been seized in Aruba but that did not contain heroin, met with Carvajal in Queens, New York to make the delivery. During the meeting, Carvajal told the CI to follow a car driven by Ruiz out of the area because Carvajal was concerned that there was a lot of "heat" in the vicinity of the meeting. (*Id.* ¶ 18.) After Carvajal received the suitcase from the CI and paid the CI (*id.* ¶¶ 19-20), he placed the suitcase in Ruiz's car and got into the passenger seat of the car. (Trial Transcript ("Tr.") 88-90.)[3] Shortly after Carvajal got into Ruiz's car, Carvajal and Ruiz were placed under arrest. (PSR ¶ 21.) During a search incident to the arrest of Carvajal and Ruiz, agents found .44 grams of heroin in the center console of Ruiz's car, packaged in a manner that was consistent with a sample taken from a

---

  [1] Ruiz's former counsel, Alexander Eisemann and B. Alan Seidler, Esqs., are submitting sworn declarations in connection with the Government's response to Ruiz's motion. The declaration of Mr. Seidler is being submitted with this response. The declaration of Mr. Eisemann will be submitted under separate cover. Should the Court find that a hearing is necessary, the Government will show through live testimony of Mr. Eisemann and Mr. Seidler that Ruiz's allegations are without merit.

  [2] A copy of Ruiz's PSR is being submitted to the Court under separate cover.

  [3] Copies of cited portions of the trial transcript are annexed hereto as Exhibit A.

Hon. Theodore H. Katz
February 1, 2008
Page 3 of 15

wholesale quantity of heroin.  (*Id.* ¶ 22.)  Agents also recovered a document that was identified as a drug ledger from Ruiz's car.  (Tr. 97-99.)

    **B.**    **Trial**

Ruiz, William Saenz Duque and James Duque (collectively, "defendants") were charged in Count One of a two-count indictment with conspiracy to distribute and possess with intent to distribute one kilogram and more of heroin, in violation of Title 21, United States Code, Section 846, and in Count Two of the indictment with conspiracy to import into the United States one kilogram and more of heroin, in violation of Title 21, United States Code, Section 963.  Counsel Isabelle A. Kirchner, Esq., initially was appointed to represent Ruiz on September 20, 2002, but after Ruiz sought new counsel, Alexander Eisemann, Esq., was appointed to represent Ruiz on December 6, 2002.  On March 21, 2003, the District Court held a pretrial conference, attended by Ruiz, at which the District Court set June 10, 2003, as the date on which the trial of Ruiz and his co-defendants would commence.  (*See United States v. Ruiz*, No. 02 Cr. 1290 (RMB) (docket entries for 3/13/03 and 3/21/03).)[4]

Ruiz's trial commenced on June 10, 2003, pursuant to the District Court's March 21, 2003 order.  (*See id.* (docket entries for 6/10/03).)  During the Government's case-in-chief, the Government read into evidence a stipulation, signed by the Government and counsel for each defendant, discussing the method by which the Government's chemist, Noel Vadell, determined that the suitcase seized in Aruba contained more than a kilogram of heroin.  (See Stipulation, *United States v. Duque* (June 16, 2003) (introduced as Government Exhibit 404).)[5]  The stipulation was entered into after Mr. Eisemann, on behalf of all of the defendants, argued before Judge Berman that the defense needed to be satisfied that the chemist's process for determining the weight of the heroin was a fair one before it would agree to accept the stipulation.  (Tr. 204-06.)  In addition, defendant William Saenz Duque, who testified in his own defense, admitted that he had agreed to transport a suitcase containing "a kilo of heroin" from Colombia to Aruba, although he stated that he had been led to believe that the suitcase was to be transported from Aruba to Holland, rather than to the United States.  (Tr. 853-54.)

The Government also introduced into evidence, over Mr. Eisemann's strenuous objections, the alleged drug ledger that had been recovered from Ruiz's car.  (Tr. 96-99 (objecting that the document was not relevant to the charged offense), 611-12 (same).)

---

[4] A copy of the docket sheet is annexed hereto as Exhibit B.

[5] A copy of the stipulation is annexed hereto as Exhibit C.

Hon. Theodore H. Katz
February 1, 2008
Page 4 of 15

Mr. Eisemann put on several witnesses in Ruiz's defense. Ruiz's first witness was a certified Spanish interpreter who provided an alternative transcription and translation of a recorded conversation that had been introduced in the Government's case against Ruiz (Tr. 661-76.) Next, Mr. Eisemann called five different character witnesses to testify that Ruiz was a devoted, generous father with a reputation for honesty and integrity within his community. (Tr. 955-91.) Mr. Eisemann sought to call additional witnesses on Ruiz's behalf, but initially was prohibited from doing so by the District Court. After an extended colloquy outside the presence of the jury (Tr. 992-98, 1012-15), the District Court permitted Mr. Eisemann to call a co-worker of Ruiz who testified about the investment pool in which Ruiz was involved at work. (Tr. 1016-1020.) Mr. Eisemann also introduced exhibits and stipulations on Ruiz's behalf before resting. (Tr. 1021-24.) Ruiz did not testify on his own behalf.

In his closing argument for Ruiz, Mr. Eisemann asserted that the process used by the Government's chemist was not sufficiently reliable to support a finding that more than one kilogram of heroin was in the suitcase (Tr. 1111-12), and again asserted that the document recovered from Ruiz's car related to an investment pool at his job and was not a drug ledger. (Tr. 1112-13.)

On June 20, 2003, the jury returned a verdict finding Ruiz guilty of Count One and not guilty of Count Two of the indictment. Ruiz faced a ten-year mandatory minimum sentence as a result of the verdict.[6]

### B. Sentencing

After Ruiz's conviction, he terminated Mr. Eisemann's representation and retained B. Alan Seidler, Esq., as counsel. Ruiz's PSR calculated the applicable base offense level under the Sentencing Guidelines at 32 pursuant to U.S.S.G. § 2D1.1(c)(4). Mr. Seidler made several applications for a reduction in the applicable offense level under the Sentencing Guidelines on Ruiz's behalf, but did not seek "safety-valve" relief from the ten-year mandatory sentence applicable to the offense for which he was convicted, pursuant to 18 U.S.C. § 3553(f) and the corresponding provision of the Sentencing Guidelines.[7] Ruiz's applications were denied by the

---

[6] *See* 21 U.S.C. § 841(b)(1)(A) (providing for 10-year mandatory minimum sentence where defendant is convicted of distribution or possession with intent to distribute one kilogram or more of heroin); *id.* § 846 (indicating that penalties for conspiracy conviction are "the same penalties as those prescribed for the offense, the commission of which was the object of the . . . conspiracy").

[7] 18 U.S.C. § 3553(f), also known as the "safety valve" provision, permits a court to sentence a defendant below the mandatory minimum that would otherwise apply to certain drug

Hon. Theodore H. Katz
February 1, 2008
Page 5 of 15

District Court at a hearing on December 12, 2003.  At the beginning of the hearing, the District Court inquired of counsel whether Ruiz had considered the possibility of seeking "safety-valve" relief:

> THE COURT:	Before I start, I would ask counsel if any consideration has been given to what are called the safety valve provisions of the sentencing guidelines, which under appropriate circumstances, if the conditions are met, allow sentencing below the statutory minimum.
> . . . .
> I am raising it just to have it clear so that we have a clear record as to the defense position and the government's position.
>
> MR. SEIDLER:	Your Honor, I have discussed the issue with Mr. Ruiz.  It is my firm conviction that Mr. Ruiz is not going to meet the fifth criteria to the government's satisfaction or anything even close to it.  Therefore, I did not pursue such a meeting.

---

offenses, including the offense Ruiz was found guilty of committing, if the following five conditions are met:

> (1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines;
>
> (2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;
>
> (3) the offense did not result in death or serious bodily injury to any person;
>
> (4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise . . .; and
>
> (5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan . . . .

18 U.S.C. § 3553(f).

(Dec. 12, 2003 Hr'g Tr. at 2-3.)[8] At Ruiz's sentencing proceeding, the District Court listed the materials relevant to its sentencing decision and asked Mr. Seidler if he had "had a chance to discuss all of these materials with Mr. Ruiz." Mr. Seidler responded: "Yes, Your Honor, including Mr. Ruiz's situation with regard to the safety valve. And we are not going to seek safety valve relief because of its impact on his appellate rights." (Dec. 29, 2003 Hr'g Tr. at 2.)[9] At the conclusion of the sentencing hearing, the District Court imposed a sentence of 121 months' imprisonment, to be followed by a 5-year term of supervised release. Ruiz's conviction and sentence were affirmed on appeal. *See United States v. Duque*, 123 Fed. App'x 447 (2d Cir. 2005) (affirming conviction but remanding for determination of whether to resentence pursuant to *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005)); *United States v. Duque*, 225 Fed. App'x 43 (2d Cir. 2007) (affirming District Court decision not to resentence pursuant to *Crosby*).

On October 24, 2007, Ruiz filed the 2255 Motion. Ruiz is currently serving his sentence.

**ARGUMENT**

Ruiz raises six issues in his Section 2255 motion papers. He alleges that defense counsel: (1) unilaterally waived a "safety-valve" proffer with the Government that would have enabled him to avoid application of the mandatory-minimum sentence that applied to his crime. (2255 Motion 5); (2) conceded that Ruiz would be subject to the mandatory minimum sentence by failing to challenge the Government's lab report and method of weighing the heroin recovered from Ruiz's co-conspirator (*id.* at 6); (3) refused to permit him to testify at trial (Ruiz Aff. ¶ 4); (4) refused to call any exculpatory witnesses on his behalf (*id.* ¶ 5); (5) failed to provide him with copies of evidence or other discovery materials (*id.* ¶ 7); and (6) failed to inform him that the trial would be taking place or to be prepared to defend him from the charges he was facing (*id.* ¶ 8).

Ruiz's self-serving assertions are inconsistent with record evidence and the sworn statements of counsel. In a situation such as this one, this Court has the authority to, and should, deny the 2255 Motion without a further evidentiary hearing.

---

[8] A copy of relevant portions of the December 12, 2003 hearing transcript is annexed hereto as Exhibit D.

[9] A copy of relevant portions of the December 29, 2003 hearing transcript is annexed hereto as Exhibit E.

Hon. Theodore H. Katz
February 1, 2008
Page 7 of 15

A.  **Applicable Law**

   1.  **Ruiz Faces A High Bar In Establishing Ineffectiveness Of Counsel**

   To prevail on a claim of ineffective assistance of counsel, a defendant must (1) overcome a "strong presumption" that his counsel's conduct was reasonable and show that his representation "fell below an objective standard of reasonableness" under "prevailing professional norms," and (2) "affirmatively prove prejudice," that is, show that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland* v. *Washington*, 466 U.S. 668, 687-89, 693-94 (1984); *accord United States* v. *De La Pava*, 268 F.3d 157, 163 (2d Cir. 2001); *United States* v. *Best*, 219 F.3d 192, 201 (2d Cir. 2000).  Only if both elements are satisfied can a defendant demonstrate that his counsel "was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and that the defendant was, as a result, deprived of a fair proceeding.  *Strickland*, 466 U.S. at 687.

   Under the first prong of the *Strickland* analysis, the reviewing court " 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance,' bearing in mind that 'there are countless ways to provide effective assistance in any given case' and that 'even the best criminal defense attorneys would not defend a particular client in the same way.' " *United States* v. *Aguirre*, 912 F.2d 555, 560 (2d Cir. 1990) (quoting *Strickland*, 466 U.S. at 689).

   To satisfy the second prong of the *Strickland* analysis, the defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  " 'A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *Mayo* v. *Henderson*, 13 F.3d 528, 534 (2d Cir. 1994) (quoting *Strickland*, 466 U.S. at 694).  It is insufficient to show merely that counsel's errors had "some conceivable effect" on the result, for "not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." *Strickland*, 466 U.S. at 693.

   2.  **Defense Counsel's Trial Strategy Cannot Serve as a Basis for an Ineffective-Assistance Claim**

   A defendant cannot prevail on a claim of ineffective assistance merely because he believes that his counsel's strategy was inadequate.  *See United States* v. *Sanchez*, 790 F.2d 245, 253 (2d Cir. 1986).  Furthermore, "[a]ctions or omissions by counsel that 'might be considered sound trial strategy' do not constitute ineffective assistance." *Mason* v. *Scully*, 16 F.3d 38, 42 (2d Cir. 1994) (quoting *Strickland*, 466 U.S. at 689); *accord United States* v. *Eisen*, 974 F.2d 246, 265 (2d Cir. 1992); *United States* v. *Javino*, 960 F.2d 1137, 1145 (2d Cir. 1992); *United States* v. *Di Tommaso*, 817 F.2d 201, 215 (2d Cir. 1987).  As the Supreme Court cautioned in

Hon. Theodore H. Katz
February 1, 2008
Page 8 of 15

*Strickland*, "[j]udicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Strickland*, 466 U.S. at 689. Such deference is particularly warranted when considering matters of trial strategy, which reviewing courts are "ill-suited to second-guess." *United States* v. *Luciano*, 158 F.3d 655, 660 (2d Cir. 1998); *Eisen*, 974 F.2d at 265 ("Decisions that fall squarely within the ambit of trial strategy, . . . if reasonably made, cannot support an ineffective assistance claim.").

B.  Discussion

    1.  **Defense Counsel Was Not Ineffective**

        a.  <u>Ruiz's Safety-Valve Argument is Without Merit</u>

Ruiz argues first that he received ineffective assistance because his counsel "unilaterally decided that there would be no meeting with the government to satisfy the safety valve provision." (2255 Motion 5.) Ruiz asserts that his proffer "<u>would</u> have satisfied the safety valve provision." (*Id.*).

Ruiz's argument is without merit for several reasons. First, the trial record directly contradicts Ruiz's assertion that Mr. Seidler "unilaterally decided" that he would not seek safety-valve relief. The record instead reflects that the decision to avoid seeking safety-valve relief was one made in consultation with Ruiz. At Ruiz's sentencing hearing, Mr. Seidler stated that he had the opportunity to discuss all matters relevant to sentencing with Ruiz, "including Mr. Ruiz's situation with regard to the safety valve," and that on the basis of this discussion "we are not going to seek safety-valve relief because of its impact on his appellate rights." (Dec. 29, 2003 Tr. at 2.) Ruiz then confirmed on the record in response to the District Court's questions that he had reviewed all sentencing materials with Mr. Seidler, and that he had nothing to add to Mr. Seidler's statements with respect to sentencing. (*See id.* at 3.) Mr. Seidler's declaration, submitted in connection with the Government's response to Ruiz's motion, makes clear that the decision not to seek safety-valve relief was one made in consultation with Mr. Ruiz. (Seidler Decl. ¶¶ 3-4.)

Second, Mr. Seidler's decision not to seek safety-valve relief on behalf of Ruiz was a strategic one that cannot amount to ineffective assistance of counsel. The record indicates that Ruiz was not prepared to testify truthfully at a safety-valve proffer session concerning the crime for which he was convicted, as he would be required to do in order to qualify for safety valve relief. *See* 18 U.S.C. § 3553(f)(5) (requiring that a defendant "truthfully provide[ ] to the Government *all information and evidence the defendant has concerning the offense or offenses*"

Hon. Theodore H. Katz
February 1, 2008
Page 9 of 15

related to his criminal conduct to qualify for safety valve relief) (emphasis added).  Instead, Ruiz asserted, and continues to assert, that he is innocent of the crime for which he was convicted.  *See Appellant Br.*, *United States v. Ruiz*, No. 03-1735(L), at 12 (2d Cir. Sept. 2, 2004) ("Appellant insists that he is not guilty of the crime charged.");[10] Ruiz Aff. ¶ 4 ("Deponent insists he is not guilty of the crime charged.").[11]  Under the circumstances, the decision to avoid seeking safety-valve relief reflected wise strategy that cannot serve as the basis for an ineffective-assistance claim.  *See Eisen*, 974 F.2d at 265 ("Decisions that fall squarely within the ambit of trial strategy, . . . if reasonably made, cannot support an ineffective assistance claim.").  Had Ruiz falsely professed his innocence in a misguided effort to seek safety-valve relief, he not only would have been denied the relief he sought, he also might have been subject to a sentence enhancement for obstruction of justice as a result of his false testimony.  *See, e.g.*, *United States v. Duverge Perez*, 295 F.3d 249, 252-55 (2d Cir. 2002) (affirming sentence in which enhancement for obstruction of justice was imposed based on false testimony at sentencing hearing seeking safety-valve relief).

Third, Ruiz cannot demonstrate that he suffered any prejudice as a result of his earlier decision not to seek safety-valve relief.  *See Strickland*, 466 U.S. at 694 (requiring defendant alleging ineffective assistance to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different").  Ruiz's conclusory assertion that his safety-valve proffer would have satisfied the safety-valve provision (2255 Motion 5), is squarely contradicted by his continued protestations of innocence.  The safety-valve provision requires "that the defendant provide complete information about his offense conduct and related activity, that he subjectively believes that information to be true, and that the information provided is objectively true."  *United States v. Nuzzo*, 385 F.3d 109, 118-19 (2d Cir. 2004) (footnote omitted) (citing *United States v. Reynoso,* 239 F.3d 143, 146-50 (2d Cir. 2000)).  Even if Ruiz subjectively believes that he is innocent, he would not have been able to demonstrate the objective truth of his belief in view of the strong evidence of his guilt adduced at trial and reflected by the jury's verdict.

     2.     <u>Counsel Properly Addressed Drug Weight</u>

Ruiz asserts next that his trial counsel "failed to challenge the lab report or the method of weighing the substance" that led to imposition of the 10-year mandatory minimum sentence.  (2255 Motion 6.)  Ruiz claims that the Government's support for the claim that Ruiz and his co-

---

[10] A copy of relevant portions of Ruiz's appellate brief is annexed hereto as Exhibit F.

[11] Mr. Seidler also noted that Ruiz would not be prepared to satisfy the fifth element of the safety-valve statute when asked by the District Court why Ruiz was declining to seek safety-valve relief.  (*See* Dec. 12, 2003 Hr'g Tr. at 3 ("It is my firm conviction that Mr. Ruiz is not going to meet the fifth criteria to the government's satisfaction or anything even close to it.  Therefore, I did not pursue such a meeting.").)

defendants sought to distribute more than one kilogram of heroin was "simply conclusory without <u>any</u> supporting documentation." (*Id.*)

This assertion is also squarely contradicted by the record. As indicated above, the Government and all defense counsel agreed to a stipulation setting forth in detail the procedures by which Mr. Vadell, the Government's chemist, had determined that the suitcase that was to travel to New York for distribution in the United States was filled with more than one kilogram of heroin. The analysis served as the basis for the stipulation was supported by full documentation provided by the Government to Ruiz and other defendants prior to trial.[12] In addition, the results of the test were corroborated by Ruiz's co-defendant William Saenz Duque, who admitted that he had been hired to transport a suitcase containing "a kilo" of heroin from Columbia to Aruba. (Tr. 853-54.) Notwithstanding the strong and uncontradicted evidence that the defendants had conspired to distribute more than one kilogram of heroin, Mr. Eisemann sought in closing arguments to assert that the Government's evidence was not sufficiently reliable to support a jury finding. (Tr. 1111-12.) Thus, the record reflects both that the evidence of drug weight *was* strong, and that defense counsel *did* challenge the Government's method of determining drug weight.

In any event, Ruiz's assertion could not serve as the basis for an ineffective assistance claim. Ruiz fails to assert that the suitcase *did not* contain more than one kilogram of heroin, and there is no indication in the record that any Government or defense witness was prepared to testify to a lesser drug weight. Thus, even if Ruiz were able to demonstrate that Mr. Eisemann should have called a chemist on behalf of the defense to attempt to challenge the Government's method of determining drug weight, *but cf. United States* v. *Eyman*, 313 F.3d 741, 743 (2d Cir. 2002) (attorney's decision not to call an expert witness "was a strategic decision, rather than an oversight" and so could not satisfy the standard for ineffective assistance of counsel); *United States* v. *Schmidt*, 105 F.3d 82, 90 (2d Cir. 1997) (decision not to present psychiatric experts could not serve as basis for ineffective assistance claim), he cannot demonstrate that he suffered any prejudice as a result of this strategic decision.

   3. <u>Ruiz Was Not Prohibited from Testifying at Trial</u>

Ruiz next asserts that "he wanted to testify at trial like his co-defendants," and that he "repeatedly requested his attorney permit him to do so, but the trial attorney refused." (Ruiz Aff. ¶ 4.)

Ruiz's conclusory assertions cannot serve as the basis for an ineffective assistance claim. A defendant in a criminal case has a constitutional right to testify on his or her own behalf, *see Rock* v. *Arkansas*, 483 U.S. 44, 49 (1987); *Rega* v. *United States*, 263 F.3d 18, 21 (2d Cir. 2001);

---

[12] A copy of the material supporting Mr. Vadell's analysis that was provided to the defendants prior to trial is attached hereto as Exhibit G.

Hon. Theodore H. Katz
February 1, 2008
Page 11 of 15

*Brown* v. *Artuz*, 124 F.3d 73, 76 (2d Cir. 1997), but any claim that counsel failed to advise a defendant of his or her right to testify or overrode defendant's desire to testify is subject to a *Strickland* analysis, *see Brown*, 124 F.3d at 79. Courts are entitled to presume that a defense attorney will only rarely fail to advise a defendant of her right to testify on the part of defense counsel, *see Strickland*, 466 U.S. at 689, particularly because "[i]t is extremely common for criminal defendants not to testify, and there are good reasons for this . . . . Yet it is simple enough after being convicted for the defendant to say, 'My lawyer wouldn't let me testify. Therefore I'm entitled to a new trial.'" *Underwood* v. *Clark*, 939 F.2d 473, 475 (7th Cir. 1991); *see also United States* v. *Castillo*, 14 F.3d 802, 805 (2d Cir. 1994) (defendant's sworn statement that he told counsel he wanted to testify but counsel refused to let him was not sufficient to establish ineffective assistance claim where defendant had been advised of his right to testify); *but cf. Chang* v. *United States,* 250 F.3d 79, 84 (2d Cir. 2001) (finding colorable claim that counsel's performance was deficient where defendant submitted affidavit alleging that trial counsel prohibited him from testifying and that he would have testified if he knew counsel could not prevent him from doing so).

      Here, the record demonstrates that Ruiz knew he had a right to testify, and that Mr. Eisemann did not prohibit him from exercising that right. During the trial, each of Ruiz's co-defendants actually took the stand and testified on his behalf. (*See*, *e.g.*, Tr. 677 (testimony of defendant James Duque), Tr. 807 (testimony of defendant William Saenz Duque).) Under these circumstances, Ruiz cannot assert that he was unaware of his right to testify at trial. Ruiz himself acknowledges that he was aware of his right to testify; he alleges that he "wanted to testify at trial like his co-defendants," but he asserts that his "trial attorney refused" to let him testify. (Ruiz Aff. ¶ 4.) This implausible and unsupported assertion is directly contradicted by the sworn declaration of Mr. Eisemann, who states that he would not have prohibited any defendant, including Ruiz, from exercising his constitutional right to testify on his behalf.

      Even assuming *arguendo* that Mr. Eisemann somehow prohibited Ruiz from exercising his right to testify, Ruiz must also prove prejudice from that conduct. To make that showing, he must demonstrate a reasonable probability that his "proposed testimony would have altered the outcome of the trial." *Rega*, 263 F.3d at 21. Ruiz has not done so. Ruiz offers no specifics concerning the nature of the testimony that he allegedly would have given had he been permitted to testify. Thus, any assessment of the effect that his testimony might have had remains pure speculation and cannot support a finding of ineffective assistance. Even assuming that Ruiz had asserted his innocence through his own testimony, rather than through the testimony of the seven defense witnesses put on by Mr. Eisemann, he cannot overcome the strong evidence of guilt put forward by the Government, which included proof of his active participation in the September 16, 2002 drug transaction that was monitored by law enforcement authorities and that resulted in his arrest, and the drug ledger and heroin that were recovered from his vehicle incident to arrest.

4. Counsel Did Not Refuse to Call Exculpatory Witnesses

Ruiz's fourth claim—that Mr. Eisemann "refused to call any witnesses on [his] behalf" (Ruiz Aff. ¶ 5)—may be disposed of summarily. The trial transcript proves the falsity of Ruiz's sworn statement; it shows that Mr. Eisemann called no fewer than seven witnesses on Ruiz's behalf, including a translator, five character witnesses, and a witness who testified about the investment pool in which Ruiz was involved at work. (*See* Tr. 661-76, 955-91, 1016-20.) Each of these witnesses testified in an effort to exculpate Ruiz. Accordingly, Ruiz's assertion that Mr. Eisemann failed to call exculpatory witnesses on his behalf is without merit.

In any event, Mr. Eisemann's reasonable tactical decisions concerning the witnesses to call on Ruiz's behalf cannot serve as the basis for an ineffective assistance claim. "[T]he decision whether to call any witnesses on behalf of the defendant, and if so which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys in almost every trial." *United States* v. *Nersesian*, 824 F.2d 1294, 1321 (2d Cir. 1987); *see United States* v. *Luciano*, 158 F.3d 655, 660 (2d Cir. 1998) ("The decision not to call a particular witness is typically a question of trial strategy that appellate courts are ill-suited to second-guess."); *United States* v. *Eisen*, 974 F.2d 246, 265 (2d Cir. 1992) (decision to call witnesses "'fall[s] squarely within the ambit of trial strategy, and, if reasonably made,' cannot support an ineffective assistance claim'") (quoting *Nersesian*, 824 F.2d at 1321).

5. Counsel Did Not Fail to Provide Ruiz with Copies of Evidence or Discovery Materials

Ruiz asserts next that even though he asked Mr. Eisemann for copies of all discovery materials, he was never provided those materials, and that he "was never shown the photographs, or the video used as trial evidence against [him]" until trial. (Ruiz Aff. ¶ 7.)

This assertion is contradicted by the record, and is in any event insufficient to support an ineffective assistance claim. Mr. Eisemann's declaration indicates that he met or spoke with Ruiz to discuss the case with him on at least several different occasions prior to trial, and that he would have used these meetings to prepare for trial. Mr. Eisemann's strategy reflected his awareness of Ruiz's views on the significance of critical discovery materials, including the drug ledger found in Ruiz's car. Ruiz maintains that the sheet of paper described by Government witnesses as a drug ledger actually "represented amounts owed to [him] by his colleagues at work." (Ruiz Aff. ¶ 5.) At trial, Mr. Eisemann brought forward witnesses in support of Ruiz's interpretation of the document, and during closing Mr. Eisemann argued that the document was "just a list of debts" owed to Ruiz by people at his job. (Tr. 1113.) Mr. Eisemann could not have gained this insight into Ruiz's views of the document without consulting with Ruiz about it.

More generally, Ruiz fails to explain how his assertion, even if it were true, would bring Mr. Eisemann's representation of him "outside the wide range of professionally competent assistance." *See Strickland*, 466 U.S. at 690. Mr. Eisemann acted reasonably in determining

what discovery provided by the Government was sufficiently important to share with Ruiz. *See Eisen*, 974 F.2d at 265 (noting that reasonable decisions made within the ambit of trial strategy cannot support an ineffective assistance claim). Ruiz also fails to explain how the outcome of his trial might have been different had he obtained the opportunity to review discovery that he now says he was denied. *See Strickland*, 466 U.S. at 694 (requiring proof of "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" to demonstrate ineffective assistance of counsel). Accordingly, Ruiz's bare assertion that he was denied the opportunity to review discovery in advance of trial cannot support his ineffective assistance claim.

6. <u>Ruiz Was Informed of Trial and Counsel Was Prepared for Trial</u>

Finally, Ruiz asserts that he "did not learn until June 9, 2003, that trial was scheduled to begin on June 10, 2003," and moreover that his trial counsel "never worked with him to prepare for trial, and "was unprepared to defend [him]." (Ruiz Aff. ¶ 8.)

The record also makes clear that this assertion is false. As indicated above, the docket sheet for the case reflects that, on March 21, 2003, Ruiz attended a pretrial conference at which the District Court set June 10, 2003, as the date on which the trial of Ruiz and his co-defendants would commence. The trial did in fact commence on June 10, 2003. Accordingly, Ruiz cannot argue that he was informed of the start of trial only on June 9, 2003.

Ruiz's bare allegation that Mr. Eisemann never worked with him to prepare for trial, and was not prepared to defend him, is also insufficient to establish ineffective assistance of counsel. It is contradicted by Mr. Eisemann's sworn declaration, in which he explains that his calendar reflects several occasions on which he met with Ruiz or spoke with him over the telephone prior to trial. It is also contradicted by the trial transcript, in which Mr. Eisemann's questions to witnesses and arguments to the Court revealed his thorough preparation for trial. Moreover, Ruiz's allegation is insufficient because Ruiz fails to explain how Mr. Eisemann's preparation for trial "fell below an objective standard of reasonableness" under "prevailing professional norms," *Strickland*, 466 U.S. at 688. Nor does Ruiz assert facts that would, if proven true, show that "but for [Mr. Eisemann's allegedly] unprofessional errors, the result of the proceeding would have been different," *id.* at 694. More specifically, Ruiz does not explain the manner in which Mr. Eisemann's preparation was deficient, nor how any further preparation by Mr. Eisemann might have affected the outcome of the trial.

2. **The 2255 Motion Should Be Denied Without a Further Evidentiary Hearing**

The Second Circuit, quoting the Supreme Court, has recognized that in Section 2255 cases "allegations of facts outside the record can be fully investigated without requiring the personal presence of the prisoner." *Chang* v. *United States*, 250 F.3d 79, 85 (2nd Cir. 2001) (quoting *Machibroda* v. *United States*, 368 U.S. 487, 495 (1962)). In *Campusano* v. *United States*, 442 F.3d 770 (2d Cir. 2006), the Circuit Court relied on *Chang* in finding that "the district

Hon. Theodore H. Katz
February 1, 2008
Page 14 of 15

court has discretion to determine if a testimonial hearing will be conducted" or if something short of a full hearing will serve to resolve the factual dispute. *Id.* at 776 (citing *Chang*, 250 F.3d at 85).

In this case, given the record discussed above, this Court should follow *Chang* and its progeny and deny the 2255 Motion without a hearing. In *Chang*, the defendant submitted a "highly self-serving" affidavit in which he claimed that defense counsel prevented him from testifying at trial. *Chang*, 250 F.3d at 81, 86. The District Court, having received an affidavit from defense counsel contradicting Chang's claim, denied his petition without conducting a hearing. *Id.* at 82. The Court of Appeals concluded that the District Court was well within its discretion in so ruling:

> It was, therefore, within the district court's discretion to choose a middle road that avoided the delay, the needless expenditure of judicial resources, the burden on trial counsel and the government, and perhaps the encouragement of other prisoners to make similar baseless claims that would have resulted from a full testimonial hearing. The district court reasonably decided that the testimony of Chang and his trial counsel would add little or nothing to the written submissions.

*Id.* at 86.

Accordingly, given the clarity of the record, including the statements by trial and sentencing counsel, the 2255 Motion should be denied without a further evidentiary hearing. Live testimony would "add little or nothing to the written submissions." *Id.* Moreover, should the Court decide the issue on the written submissions, it will avoid "needless expenditure of judicial resources, the burden on trial counsel and the government, and perhaps the encouragement of other prisoners to make similar baseless claims." *Id.*

Hon. Theodore H. Katz
February 1, 2008
Page 15 of 15

## CONCLUSION

For the reasons stated above, the Court should deny the 2255 Motion.

                                             Respectfully submitted,

                                             MICHAEL J. GARCIA
                                           United States Attorney

                    By:    s/ Howard S. Master
                             Howard S. Master
                             Assistant United States Attorney
                             Southern District of New York
                             (212) 637-2248

cc:     Hector Ruiz